UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SYMES DEVELOPMENT & PERMITTING, LLC, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil Action No. <br> ) <br> ) |
| TOWN OF CONCORD and the TOWN OF CONCORD PLANNING BOARD, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

## COMPLAINT

**Nature of Case**

Plaintiff Symes Development & Permitting, LLC ("Symes") brings this case pursuant to 42 U.S.C. § 1983 seeking redress for a taking of property without compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution. A land use decision (the "Decision") of the defendant Town of Concord Planning Board (the "Planning Board" or the "Board") imposes unconstitutional conditions on Symes. The Decision was issued under the Massachusetts Subdivision Control Law, M.G.L. c. 41, §§ 81K to 81GG (the "Subdivision Control Law"), upon Symes' application for approval to subdivide a parcel of land in Concord into marketable building lots. A copy of the Decision is attached as <u>Exhibit A</u>.

The Decision's conditions of approval include the uncompensated reservation for three years or longer of five building lots – nearly 28% of the approved lots – for possible future use by the defendant Town of Concord (the "Town") for public purposes. The Decision requires two lots to be set aside for possible use as public parkland and three lots to be set aside for possible

use for affordable housing. The Decision cites as authority for these requirements two provisions of the Board's rules and regulations governing the subdivision of land. The purpose of these regulations is to compel developers who seek to subdivide land into surrendering newly-created lots to further Town goals that bear no substantial relationship to the impacts of the proposed development. This scheme is unconstitutional.

## Jurisdiction and Venue

1. The Court's jurisdiction over this matter derives from 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

2. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because the real property at issue is situated in Middlesex County in the Commonwealth of Massachusetts.

## Parties

3. Symes is a Massachusetts limited liability company with its principal place of business at 50 Dodge Street in Beverly, Essex County, Massachusetts.

4. The Town of Concord is a duly incorporated town of the Commonwealth of Massachusetts with offices at 22 Monument Square, Concord, Middlesex County, Massachusetts.

5. The Town of Concord Planning Board is a public body of the Town of Concord with an address of 141 Keyes Road, Concord, Middlesex County, Massachusetts.[1]

---

[1] Kristen Ferguson, Burton Flint, Nathan Bosdet, Allen Sayegh, Kate McEneaney, Haley Orvedal and Linda Miller were the members of the Planning Board on the date the Decision issued.

**Procedural Background**

6. Pursuant to a written purchase and sale agreement, Symes holds an interest in several contiguous parcels of land on Main Street in Concord which together total about eight acres (the "Locus").

7. On March 4, 2020, Symes applied to the Planning Board for approval of a preliminary subdivision plan. On May 6, 2020, the Board issued a decision approving the preliminary plan, with various conditions.

8. On June 17, 2020, Symes applied to the Planning Board for approval of an 18-lot definitive subdivision plan (the "Definitive Plan") based on its preliminary plan. The Definitive Plan complied with the conditions the Board imposed in connection with the preliminary plan and required no waivers from the Board's Subdivision Rules and Regulations (the "Regulations").[2] A copy of relevant provisions of the Regulations is attached as Exhibit B.

9. The Planning Board opened its public hearing on the Definitive Plan on September 8, 2020, after which the Board continued the hearing seven times. The Board closed the public hearing on December 8, 2020.

10. On December 30, 2020 the Board issued the Decision.

**The Decision**

11. The Decision conditions Board approval of the proposed subdivision on Symes reserving for three years five building lots that cannot be used, disturbed, or improved in any manner during that period. See Ex. A, pp.14-16; Ex. B, pp. 1 & 3.

12. The Planning Board selected two lots, Lot A1 and Lot 6, and conditioned subdivision approval on setting those lots aside for possible future use by the Town as a public

---

[2] The Board granted Symes a waiver that Symes did not request, allowing a reduction in the width of the subdivision roadways.

park under Section 6.20 of the Regulations. The Board further required Symes to reserve a five-foot-wide easement over Lot 13 for public access to the possible future public park. See Ex. A, p.14.

13. The water line that Symes proposes to install to serve the subdivision will cross Lot 13 and Lot A1 and connect to a main on Highland Street. See Ex. A, p. 2.

14. The Planning Board selected three additional lots and conditioned subdivision approval on setting those lots aside for possible future use for housing purposes pursuant to the Town's Inclusionary Housing Bylaw (the "Housing Bylaw") and Section 6.21 of the Regulations. See Ex. A, pp.14-16; Ex. B, p. 3. A copy of the Housing Bylaw is attached as Exhibit C.

15. The Housing Bylaw does not allow for a waiver of the requirement that lots be reserved; the reservation of land is mandatory. See Ex. C.

16. The Housing Bylaw includes certain exceptions but the Board found that no exceptions applied here. See Ex. C, Section 3; Ex. A, p. 15.

17. Section 6.20 of the Regulations does not require, and the Board did not make, findings that there is any nexus or relationship between Symes' proposed subdivision and the Town's need for public parkland.

18. Section 6.20 of the Regulations does not require, and the Board did not make, findings that the two lots required to be reserved for possible use as public parkland are roughly proportional to the impact on the availability of public parkland in the Town caused by Symes' proposed subdivision.

19. Neither the Housing Bylaw nor Section 6.21 of the Regulations requires, and the Board did not make, findings that there is any nexus or relationship between Symes' proposed subdivision and the Town's need for affordable housing. The Board did not find that any of the activities contemplated by the Definitive Plan, such as installing roadways and sidewalks, installing a drainage system, and installing utilities, would make housing in the Town less affordable or affordable housing in the Town less available.

20. Neither the Housing Bylaw nor Section 6.21 of the Regulations requires, and the Board did not make, findings that the three lots required to be reserved for possible use for affordable housing are roughly proportional to the impact on housing affordability or the availability of affordable housing in the Town caused by Symes' proposed subdivision.

21. Sections 6.20 and 6.21 of the Regulations prohibit any use or improvement of the five reserved building lots without the express permission of the Board. See Ex. B, pp. 1 & 3. This prohibition effectively transfers control of these lots to the Board.

22. The Decision's aggregate requirement that complete control of nearly 28% of the approved building lots shown on the Definitive Plan be transferred to the Board for three years or more is an unconstitutional condition.

23. The Planning Board, in conditioning approval of the subdivision on Symes' transfer to the Board of control over five building lots for three years or more, has also transferred to itself pervasive control over what occurs on the rest of the Locus during that period. Work integral to the project must be performed on the reserved building lots, including installation of the project's water line and significant excavation and grading work necessary for both road construction and installation of the project's drainage system. Thus, much of the work

necessary to complete the subdivision cannot be performed during the set-aside period without the express approval of the Board. Ex. B, pp. 1 & 3.

24.     The three-year period of Planning Board control over the five building lots does not begin to run until the Board endorses the Definitive Plan. See Ex. B, pp. 1 & 3; Ex. C, p. 1. Before Definitive Plan endorsement, Symes must obtain a series of approvals from Town staff and from other public bodies, including the Historical Commission, the Natural Resources Commission, and the Zoning Board of Appeals. See Ex. A, pp. 18-19. The requirement that these approvals be obtained before the Board will endorse the Definitive Plan operates to extend the time of the taking beyond three years. The length of this additional period of taking is largely if not entirely in the hands of Town staff and these public bodies.

25.     The requirement in the Decision that Symes obtain a special permit for earth removal from the Concord Zoning Board of Appeals before the Board will endorse the Definitive Plan is notable due to the right of abutters to appeal such a permit (see M.G.L. c. 40A, § 17), which could extend the time before endorsement of the Definitive Plan for years. See Ex. A., pp. 3 & 19.

26.     The combined effect of the Decision's aforementioned conditions is that Symes must place nearly 28% of the approved building lots entirely in the hands of the Planning Board and other Town officials for three years and likely much longer. This immediately and substantially diminishes the market value of the remaining, un-reserved lots and the Locus as a whole.

27.     Should the Town decide not to purchase the reserved lots, Symes will have lost their value entirely for three years or more without compensation.

## COUNT I
(42 U.S.C. § 1983)

28. Symes incorporates the allegations of paragraphs 1 through 27 as if set forth at length here.

29. The Town has imposed unconstitutional conditions on Symes. "One of the principal purposes of the Takings Clause is 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" Dolan v. City of Tigard, 512 U.S. 374, 384 (1994) (quoting Armstrong v. United States, 364 U.S. 40, 49 (1960)).

30. The Town has taken nearly 28% of the approved building lots for three years or more without justification or compensation. "[A] unit of government may not condition the approval of a land-use permit on the owner's relinquishment of a portion of his property unless there is a 'nexus' and 'rough proportionality' between the government's demand and the effects of the proposed land use." Koontz v. St. Johns River Water Mgmt. Dist., 570 U.S. 595, 599 (2013).

31. The Board did not make any determination or factual finding regarding the relationship between the proposed subdivision and the need for parkland or affordable housing in the Town. "[T]he [Town] must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." Dolan, 512 U.S. at 391.

32. The Decision effects a taking through the imposition of unconstitutional land-use conditions for which Symes is entitled to compensation. "We have rejected the argument that government action must be permanent to qualify as a taking. Once the government's actions have worked a taking of property, 'no subsequent action by the government can relieve it of the duty

to provide compensation for the period during which the taking was effective.'" Arkansas Game & Fish Comm'n v. United States, 568 U.S. 23, 33 (2012) (quoting First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cty., Cal., 482 U.S. 304, 321 (1987)); see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency, 535 U.S. 302, 322 (2002) ("[C]ompensation is mandated when [. . .] the government occupies the property for its own purposes, even though that use is temporary").

## Prayers for Relief

WHEREFORE, Symes respectfully prays that the court enter judgment as follows:

(a) under Count I, awarding Symes the damages it has suffered as a result of the Town's taking of a portion of the Locus through the imposition of unconstitutional land-use conditions;

(b) awarding Symes its reasonable attorneys' and experts' fees and costs pursuant to 42 U.S.C. 1988; and

(c) granting such further relief as the court deems necessary or appropriate, in the interests of justice.

SYMES DEVELOPMENT & PERMITTING, LLC,

By its attorneys,

/s/ Donald R. Pinto, Jr.
Donald R. Pinto, Jr., BBO No. 548421
dpinto@pierceatwood.com
Joel Quick, BBO No. 694265
jquick@pierceatwood.com
PIERCE ATWOOD LLP
100 Summer Street
Boston, Massachusetts  02110
(617) 488-8100

Dated:  April 1, 2021