UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SYMES DEVELOPMENT & PERMITTING, LLC,<br><br>   Plaintiff,<br><br>  v.<br><br>TOWN OF CONCORD and the TOWN OF CONCORD PLANNING BOARD,<br><br>   Defendant. | Civil Action No. 1:21-cv-10556-NMG |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

The defendants, the Town of Concord (the "Town") and the Town of Concord Planning Board (the "Planning Board"), hereby submit this memorandum in support of their motion under Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint by the plaintiff, Symes Development & Permitting, LLC ("Symes"). In 2020, Symes applied to the Planning Board for approval of an 18-lot definitive subdivision plan located on Main Street in Concord (the "Property"). Pursuant to the Massachusetts Subdivision Control Law and the Town's Inclusionary Housing Bylaw, both of which the Planning Board is bound by state law to follow, the Planning Board issued a decision approving the plan (the "Decision"), which reserves five lots for a period of three years while the Town determines whether or not to purchase those lots for just compensation. Symes now complains that this temporary reservation is an unconstitutional condition for which it is entitled to compensation. The Planning Board's Decision is, at most, a temporary development moratorium which will either result in Symes being paid fair market value for the reserved lots, or in Symes being permitted to develop those lots as it wants. The Decision does not constitute a taking, and the Complaint should be dismissed.

I.     **FACTS**

The factual allegations in the Complaint, as expanded upon and clarified by the documents attached as exhibits to the Complaint and by applicable Massachusetts state law,[1] are as follows.

Symes does not own the Property at issue in this case, but allegedly holds an option to purchase it under a written purchase and sale agreement. Complaint, ¶ 6. In June 2020, Symes applied to the Planning Board for approval of an 18-lot definitive subdivision plan at the Property. *Id.* at ¶ 7. The Planning Board reviewed the application pursuant to the Massachusetts Subdivision Control Law, M.G.L. c. 41, §§ 81K–81GG, which permits property to be divided into two or more developable lots subject to local regulation focused on "protecting the safety, convenience and welfare." M.G.L. c. 41, § 81M. The Subdivision Control Law requires local planning boards to adopt rules and regulations that govern their consideration of subdivision applications and provide notice to applicants of the requirements to be imposed on such applications. *Id.* at § 81Q. Local planning boards may "impose, as a condition for the approval of a plan of a subdivision, that any of the land within said subdivision be dedicated to the public use, or conveyed or released to the…town in which the subdivision is located, for use as a public way, public park or playground, or for any other public purpose," provided that it pays "just compensation to the owner thereof." *Id.*; M.G.L. c. 41, § 81U (a three-year moratorium on building on said land is permissible). The Planning Board has promulgated its own subdivision rules and regulations, excerpts of which are attached to the Complaint. *See* Complaint, ¶ 8 & Exhibit B.

---

[1] This Court may take notice on a motion to dismiss of the provisions of documents relied upon in the Complaint. *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996).

The Planning Board convened a public hearing to consider the application in September 2020, and issued its Decision approving the subdivision plan in December. *Id.*, ¶¶ 9-10. The Decision provides that two lots in the subdivision must be set aside for up to three years for possible future purchase and use by the Town as a public park. *Id.*, ¶ 12 & Exhibit A (Decision), p. 14. Three lots in the subdivision must be set aside for up to three years for possible future purchase and use by the Town for housing purposes. *Id.*, ¶ 14 & Exhibit A (Decision), pp. 14-16. The Decision requires that a final definitive plan by Symes contain a notation identifying these five lots as reserved, and further "stating that no streets, utilities, buildings, or other improvements may be made, built or installed within the reserved area without the Planning Board's approval until a release of reservation signed by the Planning Board is recorded in the South Middlesex Registry of Deeds or, if the reserved area is registered land, is filed with the Land Court." *Id.*, Exhibit A (Decision), p. 18. Development of the subdivision is permitted outside of these five lots, subject to Symes obtaining other necessary permits and approvals.[2]

The Planning Board's Subdivision Rules and Regulations (the "Regulations") provide that, with respect to land reserved for public purposes, "[d]uring the three year reservation period, the Town may elect to acquire any or all of the reserved land and shall justly compensate the owner for the land acquired. If the Town does not elect to acquire the land within the three year reservation period, the subdivider may proceed with improvements in accordance with the

---

[2] Symes alleges that the Town has seized complete control over the five lots in its subdivision for three years. Complaint at ¶¶ 22-23 (alleging that the Decision "effectively transfers control of these lots to the Board…for three years or more…by "prohibit[ing] any use or improvement of the five reserved building lots…."). These allegations mischaracterize the scope of the reservations. Nothing in either the regulations or the Decision suggests that the reservations are the complete bars to development that Symes suggests. Rather, the reservations require the developer to seek the Board's approval before conducting work on the reserved lots. Symes does not allege that it has sought such approval and been denied.

approved subdivision plan." *Id.*, Exhibit B (Regulations), Section 6.20. With respect to land reserved for housing purposes, the procedure is the same; the Town may decide to exercise its purchase right over the reserved lots by providing Symes with notice of its intent to purchase and by offering as a purchase price the fair market value of the land as supported by an appraisal report. *Id.*, Exhibit B (Regulations), Section 6.21.5 (Exercise of Rights Under the Reservation), Section 6.21.7 (Just Compensation). The provisions concerning the reservation of land for housing purposes arise from the Town's Inclusionary Housing Bylaw, and are mandatory subject to certain exceptions not applicable here. *Id.* at ¶¶ 15-16; Exhibit B (Regulations), Section 6.21; Exhibit C (Inclusionary Housing Bylaw).

## II.   ARGUMENT

### A.   Standard of Review

To survive a motion to dismiss, a complaint must allege sufficient factual matter to state a claim that is "plausible on its face." *See* Fed. R. Civ. P. 12(b)(6), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, the complaint must do more than offer "labels and conclusions," and instead must allege enough facts to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. "If a complaint fails to set forth 'factual allegations, either direct or inferential, respecting each element necessary to sustain recovery under some actionable legal theory,' then dismissal is appropriate." *Natale v. Espy Corp.*, 2 F. Supp. 3d 93, 99 (D. Mass. 2014) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio,* 406 F.3d 1, 6 (1st Cir. 2005)). Taking the allegations in the Complaint as true (as required on a motion to dismiss), Symes' Complaint fails

to state a claim upon which relief can be granted because it has failed to allege that any taking of property has actually occurred.

**B.      This Court Should Abstain From Hearing Plaintiff's § 1983 Claim**

In addition to this case, Symes has appealed the Decision to the Massachusetts Land Court under the appeal provisions of the state Subdivision Control Law.  *Symes Dev. & Permitting, LLC v. Town of Concord Planning Bd.*, No. 21 MISC 00021 (HPS) (Mass. Land Court).  As a threshold matter, it would be appropriate for this court to abstain from ruling on Plaintiff's § 1983 claim where this pending state-court litigation could settle the entire issue.  *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941) ("The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court.").  Abstention is appropriate where "(1) substantial uncertainty exists over the meaning of the state law in question, and (2) settling the question of state law will or may well obviate the need to resolve a significant federal constitutional question." *Casiano-Montanez v. State Ins. Fund Corp.*, 707 F.3d 124, 128 (1st Cir. 2013) (citation and internal quotations omitted).

Both factors point to abstention here.  There are currently motions for summary judgment pending before the Land Court to determine whether the Planning Board's application of the Inclusionary Housing Bylaw is valid or whether it impermissibly conflicts with the Massachusetts Subdivision Control Law.  *See Complaint, Symes Dev. & Permitting*, No. 21 MISC 000021 (Jan. 15, 2021).  If the Land Court determines that the Bylaw is invalid, neither that court nor this one will need to reach the constitutional questions plaintiffs raise here.  *See Isthmus Landowners Ass'n v. California*, 601 F.2d 1087, 1091 (9th Cir. 1979) (abstention appropriate where the suit involved "land use planning…a sensitive area of social policy," where

resolving the state questions would "obviate the need for federal constitutional adjudication," and the state law had "not yet been definitively interpreted by the [state] courts").

### C. The Planning Board's Temporary Reservation of Some of the Lots on the Property is Not a Taking.

Symes' sole claim in this matter is a claim under 42 U.S.C. § 1983 alleging that the Town "has imposed unconstitutional conditions on Symes" by taking "nearly 28% of the approved building lots for three years or more without justification or compensation." Complaint, ¶¶ 29-30. The Planning Board's actions do not constitute a taking and Symes has no right to compensation for this temporary development moratorium.

The Takings Clause prevents the government from taking private property for public use without just compensation. *Franklin Mem'l Hosp. v. Harvey*, 575 F.3d 121, 125 (1st Cir. 2009). Importantly, the Supreme Court has recognized a "special application" of this doctrine "protect[ing] the Fifth Amendment right to just compensation for property the government takes when owners apply for land-use permits" that squarely addresses this case. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). This "special application" "reflect[s] two realities": first, "that land-use permit applicants are especially vulnerable to…coercion…because the government often has broad discretion to deny a permit that is worth far more than property it would like to take"; and second, "that many proposed land uses threaten to impose costs on the public that dedications of property can offset." *Id.* at 604-605. Thus, the unconstitutional conditions doctrine "accommodate[s] both realities by allowing the government to condition approval of a permit on the dedication of property to the public so long as there is a 'nexus' and 'rough proportionality' between the property that the government demands and the social costs of the applicant's proposal." *Id.* at 605-606.

6

"[T]he premise of an unconstitutional conditions claim in the Takings Clause context is that the imposition of the condition in question would constitute a 'taking without just compensation' if the Government were to impose such a condition without the requisite nexus." *Singer v. City of N.Y.*, 417 F. Supp. 3d 297, 325 (S.D.N.Y. 2019), quoting *Koontz*, 570 U.S. at 612 ("A predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure the person into doing." (internal quotation omitted)). Here, there has been no "taking without just compensation," either under a *per se* or a regulatory takings theory. Accordingly, Symes' "unconstitutional conditions doctrine claim fails," and this case must be dismissed." *See id.* at 327 (dismissing unconstitutional conditions taking claim when plaintiff did not allege sufficient facts to support a taking).

      1.    <u>Count I Fails to State a Claim for a *Per Se* Taking because the Town has Not Permanently Deprived Symes of the Value of its Property.</u>

Symes' Complaint fails to state a claim for a *per se* taking because Symes has not alleged that the Planning Board's actions caused it "to suffer a permanent physical invasion of [the] property," *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005), or "denie[d] all economically beneficial or productive use of [Symes'] land." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992). Moreover, the Decision, at most, imposes a moratorium on Symes' development of a subset of its parcels while the Town considers whether to purchase those parcels. "A moratorium that deprives the owner of value for a temporary period is not per se a taking because the deprivation is not permanent." *W.R. Grace & Co.-Conn. v. Cambridge City Council*, 56 Mass. App. Ct. 559, 572 (2002); *see Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 332 (2002) (same).

Symes does not allege that the Planning Board effected a "permanent physical invasion" of the Property. *Lingle*, 544 U.S. at 538. In addition, because Symes is permitted to develop at a minimum 72% of the Property as it has proposed, and may be permitted to develop the remaining 28%, it has not been denied "all economically beneficial or productive use" of the Property. *Lucas*, 505 U.S. at 1015; *see Tahoe-Sierra*, 535 U.S. at 330 (no *per se* taking even if "the diminution in value were 95% instead of 100%"). Symes does not, and could not, plausibly assert that the Planning Board has deprived it of "all economically beneficial or productive use" of the Property when the Planning Board has, in fact, *permitted* Symes to develop the vast majority of the Property—and will either be permitted to develop the remainder, or will be justly compensated for it if the Town decides to purchase that land.

    2.    <u>Count I Fails to State a Claim for a Regulatory Taking.</u>

Where regulatory action falls short of a *per se* or "total" taking, a plaintiff must establish that the challenged regulatory action is "functionally equivalent to the classic taking in which the government directly appropriates private property or ousts the owner from his domain." *Harvey*, 575 F.3d at 127, citing *Lingle*, 544 U.S. at 539. "[A] restriction on the use of property [generally] is not a taking…, unless it goes so far as to be a regulatory taking under *Penn Central Transportation Co.*" *Home Builders Ass'n of Greater Chicago v. City of Chicago*, 213 F. Supp. 3d 1019, 1024 (N.D. Ill. 2016).

In determining whether regulatory action effectuates a taking, the Supreme Court has articulated three factors courts must consider: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Murr v. Wisconsin*, 137 S.Ct. 1933, 1943 (2017), citing *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001); *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978). The absence of even a single factor

requires dismissal of Symes' takings claim.  *See Norman v. United States*, 429 F.3d 1081, 1094 (Fed. Cir. 2005) (and cases cited).  Here, Symes fails to satisfy any of these factors.

First, to establish the first prerequisite to a regulatory taking, the economic impact of the regulation must be both likely and severe.  *See Maine Educ. Ass'n Benefits Tr. v. Cioppa*, 695 F.3d 145, 157 (1st Cir. 2012); *Leonard* v. *Town of Brimfield*, 423 Mass. 152, 156 (1996) (economic impact not severe where plaintiff retained right to build on six of sixteen acres of land); *Moskow* v. *Comm'r of Envt'l Mgmt.*, 384 Mass. 530 (1981) (regulatory measure prohibiting building on 55% of plaintiff's land not a taking).  Symes' conclusory allegations concerning the economic impact of the reservations do not rise to this level.  Symes asserts that the reservation on some of the lots at the Property "immediately and substantially diminishes the market value of the remaining, un-reserved lots and the [Property] as a whole."  Complaint, ¶ 26.  Even assuming this to be true, the "remaining, un-reserved lots" indisputably will retain some (if not most) of their market value; since those remaining lots constitute the vast majority of the Property, this assertion "fails to plausibly allege an economic impact that rises to the level of a taking."  *Kabrovski v. City of Rochester, New York*, 149 F. Supp. 3d 413, 425 (W.D.N.Y. 2015) ("vague and conclusory terms" of "reduced business and lost revenues" insufficient to state a regulatory takings claim).

Symes also asserts that, "[s]hould the Town decide not to purchase the reserved lots, Symes will have lost their value entirely for three years or more without compensation."  Complaint, ¶ 27.  This argument reveals the contradiction inherent in Symes' claims.  Implicit in this allegation is the acknowledgment that, should the Town decide to purchase the reserved lots, Symes will receive just compensation for them.  *See* Complaint, Exhibit B (Regulations), §§ 6.20, 6.21.  And should the Town decide not to purchase the reserved lots, Symes will be able

to develop and sell those lots exactly as it has proposed. *See id.* This three-year pause, which is intended to provide the Town time to determine whether it wishes to purchase the reserved lots for just compensation or not, is beneficial to all involved parties: the Town will not be forced to rush to take property and Symes will be on notice not to continue expending resources to develop the affected lots. Courts should encourage this sort of advance planning and communication, rather than penalizing it through damages for takings. *See Athanasiou v. Town of Westhampton*, 30 F. Supp. 3d 84, 91 (D. Mass. 2014) ("[P]ublic announcements of plans to take property by eminent domain do not entitle property owners to damages…, because '[i]f a government risked increasing its exposure to eminent domain damages as a consequence of communicating its plans, it might choose to remain silent until the time of the actual taking—to the detriment of all parties involved.'" (quoting *Boston Edison Co. v. Mass. Water Res. Auth.*, 459 Mass. 724, 741 n.18 (2011)).

Second, Symes cannot establish that the Planning Board's reservation "interfered with distinct investment backed expectations." *Murr*, 137 S.Ct. at 1943. "Regulation of property rights does not 'take' private property when an individual's reasonable, investment-backed expectations can continue to be realized …." *United States v. Locke*, 471 U.S. 84, 107-108 (1985) (citations omitted); *R.I. Higher Educ. Assistance Auth. v. Secretary, U.S. Dep't of Educ.*, 929 F.2d 844, 852 (1st Cir. 1991). "The failure to establish reasonable, investment-backed expectations, at least under the *Penn Central* analysis, defeats [a regulatory] takings claim as a matter of law." *Love Terminal Partners, L.P. v. United States*, 889 F.3d 1331, 1346 (Fed. Cir. 2018) (alteration in original; internal quotation omitted). A plaintiff can establish a reasonable expectation of using its property in a particular way only if the regulations in place at the time the plaintiff allegedly acquired the property would have permitted the use. *See Appolo Fuels,*

*Inc. v. United States*, 381 F.3d, 1338, 1349 (Fed. Cir. 2004) ("examination of the regulatory regime at the time the [properties'] acquisitions occurred is sufficient" to defeat reasonable expectations claim); *FIC Homes of Blackstone, Inc. v. Conservation Comm'n of Blackstone*, 41 Mass. App. Ct. 681, 693 (1996) (no reasonable, investment backed expectation where wetlands restrictions in effect when plaintiff purchased property).

Symes' Complaint does not even attempt to allege that the Planning Board's decision interfered with its investment-backed expectations. Instead, the Complaint acknowledges that the reservations were made under preexisting provisions of the Regulations, and with respect to the lots reserved for housing purposes, such reservation was mandatory under the Town's Inclusionary Housing Bylaw. Complaint, ¶¶ 12-15. Symes was aware at the time that it filed its application with the Planning Board that the reservations were a likely (and in fact necessary) outcome of any approval. Symes did not have any reasonable expectation that the Regulations would not be applied to the Property, or that it would be able to immediately develop each lot in its proposed subdivision without restriction. The Complaint thus also fails to establish the second prong of the *Penn Central* test. *See Kabrovski*, 149 F. Supp. 3d at 425 (plaintiff did not plausibly allege interference with reasonable investment-backed expectations when they understood that "their ability to present outdoor amplified music would depend upon their ability to obtain special use permits, which could be denied, or which could contain limitations and restrictions").

Finally, in assessing the third criteria for a regulatory taking, the "character" of the challenged *action*, courts look to whether the government "'physically invade[d] or permanently appropriate[d] any of the [property] for its own use.'" *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 390 (D. Mass. 2020), quoting *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 225

11

(1986). Courts have also found no taking where the alleged interference with property "arises from a public program that adjusts the benefits and burdens of economic life to promote the common good." *Id.* As explained above, there has been no physical invasion of the Property. Further, the Planning Board's actions were taken "to promote the common good" by providing a park area accessible to the public and by promoting affordable housing in the Town. *See id.*; *Mass. Home Mortg. Fin. Agency* v. *New England Merchants Nat. Bank of Boston*, 376 Mass. 669, 680-689 (the provision of public housing is a "public purpose"). The Planning Board acted under a legitimate public purpose as a matter of law.

        3.        The Complaint Does Not Establish an Unconstitutional Conditions Doctrine Claim.

As established above, the Complaint does not sufficiently allege a taking, either *per se* or regulatory, through the Planning Board's decision to reserve five lots for potential purchase within the next three years. This temporary reservation – which will either end with the payment of just compensation to Symes for the lots, or with a complete lifting of the restrictions on the lots – has not substantially diminished the value of the Property; is in line with the clear requirements and provisions of the Planning Board's Regulations; and has been taken for legitimate public purposes. "Absent the pleading of facts sufficient to demonstrate a 'taking,' an unconstitutional conditions doctrine claim fails." *Singer*, 417 F. Supp. 3d at 327.

**III.     Conclusion**

For the reasons set forth above, this Court should dismiss the Complaint in its entirety.

Respectfully submitted,

TOWN OF CONCORD, TOWN OF CONCORD PLANNING BOARD

By their attorneys,

/s/ Christina S. Marshall_____
Christina S. Marshall (BBO #688348)
  cmarshall@andersonkreiger.com
David B. Lyons (BBO #699505)
  dlyons@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
617.621.6500

Dated:  May 21, 2021

Certificate of Service

I hereby certify that a true and accurate copy of this document was filed through the Electronic Case Filing system, and will be served upon the attorney of record for each party registered to receive electronic service on this 21st day of May 2021.

/s/ Christina S. Marshall_____
Christina S. Marshall