UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SYMES DEVELOPMENT & PERMITTING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF CONCORD and the TOWN OF CONCORD PLANNING BOARD,<br><br>Defendants. | Civil Action No. 1-21-cv-10556-NMG |

OPPOSITION TO MOTION TO DISMISS

Plaintiff Symes Development & Permitting, LLC ("Symes") hereby opposes the motion to dismiss filed by defendants the Town of Concord (the "Town") and the Town of Concord Planning Board (the "Planning Board" or "Board") (together, "Defendants"). As set forth in more detail below, Defendants' motion applies the wrong law and seeks dismissal of a claim that Symes has not made. Correctly analyzed, the complaint more than adequately sets forth Symes' claim for damages resulting from Defendants' imposition of unconstitutional land-use conditions. The motion to dismiss should be denied.

***Standard for a Motion to Dismiss Pursuant to FRCP 12(b)(6)***

A complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [. . .] The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has

acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

## Argument

### I. *The complaint amply alleges facts supporting Symes' unconstitutional conditions claim, which under Supreme Court precedent is analytically distinct from a traditional regulatory taking claim. The three-part Penn Central test does not apply.*

#### A. This case does not involve a physical taking claim, a total regulatory taking claim, or a *Penn Central* claim

The premise of Defendants' motion to dismiss is that Symes has not pled facts sufficient to show that a total regulatory taking has occurred, which Defendants argue means that no unconstitutional condition has been imposed. This is paired with Defendants' erroneous assertion that there can be no *per se* taking because there is no *permanent* deprivation of property – an argument that Symes debunks separately below. The Supreme Court has made clear that an unconstitutional conditions claim is different from a total regulatory taking claim. *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 548 (2005) ("[A] plaintiff seeking to challenge a government regulation as an uncompensated taking of private property may proceed . . . by alleging a 'physical' taking, a Lucas-type 'total regulatory taking,' a Penn Central taking, *or a land-use exaction violating the standards set forth in Nollan and Dolan*.") (emphasis added).[1] The Supreme Court elaborated on what a plaintiff must show to prove an unconstitutional conditions claim in *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013):

> *Nollan* and *Dolan* "involve a special application" of this [unconstitutional conditions] doctrine that protects the Fifth Amendment right to just compensation for property the government takes when owners apply for land-use permits. . . . Our decisions in those cases reflect two realities of the permitting process. The first is that land-use permit applicants are especially vulnerable to the type of

[1]The *Lingle* court here refers to the key cases of *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard,* 512 U.S. 374 (1994), which are mentioned throughout this brief.

> coercion that the unconstitutional conditions doctrine prohibits because the government often has broad discretion to deny a permit that is worth far more than property it would like to take. By conditioning a building permit on the owner's deeding over a public right-of-way, for example, the government can pressure an owner into voluntarily giving up property for which the Fifth Amendment would otherwise require just compensation. . . . So long as the building permit is more valuable than any just compensation the owner could hope to receive for the right-of-way, the owner is likely to accede to the government's demand, no matter how unreasonable. Extortionate demands of this sort frustrate the Fifth Amendment right to just compensation, and the unconstitutional conditions doctrine prohibits them.

570 U.S. at 604-605.

Defendants *do not* argue – as they must to justify dismissal – that the facts Symes has pled are insufficient to demonstrate an unconstitutional conditions claim. Instead, they argue that Symes did not assert facts showing that it has been "completely deprive[d] [. . .] of 'all economically beneficial us[e]' of [its] property." *Lingle,* 544 U.S. at 538 (quoting *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992)). As *Lingle* and *Koontz* make clear, an unconstitutional conditions claim is not the same as a *Lucas* regulatory takings claim. In a case such as this, which asserts an unconstitutional conditions claim, the question is *not* whether the challenged regulations have destroyed all real estate value. It is whether the municipality's demands and conditions are extortionate, with no sufficient nexus to, or rough proportionality with, the anticipated impacts of the development.

*Koontz* makes equally clear that a *Penn Central* analysis is inappropriate in the unconstitutional conditions context:

> [W]e need not apply *Penn Central's* "essentially ad hoc, factual inquir[y]," 438 U.S., at 124, 98 S.Ct. 2646, at all, much less extend that "already difficult and uncertain rule" to the "vast category of cases" in which someone believes that a regulation is too costly. *Eastern Enterprises,* 524 U.S., at 542, 118 S.Ct. 2131 . . . . We are not here concerned with whether it would be "arbitrary or unfair" for respondent to order a landowner to make improvements to public lands that are nearby. . . . Whatever the wisdom of such a policy, it would transfer an interest in property from the landowner to

> the government. For that reason, any such demand would amount to a *per se* taking similar to the taking of an easement or a lien.

*Koontz*, supra at 614–615.

Because Defendants' arguments that the complaint does not sufficiently state a *Lucas* regulatory takings claim or meet the *Penn Central* test are entirely misdirected, Symes will not further address them here. Symes will, however, briefly respond to Defendants' assertion that a landowner cannot bring a takings claim based on regulations it was aware of at the time it acquired the land, because such regulations would thus be factored into the landowner's "investment-backed expectations." Defendants' Memorandum at 10-11. The Supreme Court, in cases Defendants themselves cite, has rejected this very argument. *See Murr v. Wisconsin*, 137 S. Ct. 1933, 1944–1945 (2017) ("Although property interests have their foundations in state law, the *Palazzolo* Court reversed a state-court decision that rejected a takings challenge to regulations that predated the landowner's acquisition of title. 533 U.S., at 626–627, 121 S.Ct. 2448. The Court explained that states do not have unfettered authority to 'shape and define property rights and reasonable investment-backed expectations,' leaving landowners without recourse against unreasonable regulations. *Id.*, at 626, 121 S.Ct. 2448.").

B. Symes' complaint more than sufficiently states a claim under the unconstitutional conditions standard of Nollan and Dolan

The first of two questions presented by an unconstitutional conditions claim under *Nollan* and *Dolan* is "whether the government could, without paying the compensation that would otherwise be required upon effecting such a taking, demand the [property or property interest] as a condition for granting a development permit the government was entitled to deny." *Lingle,* 544 U.S. at 546–547. Turning to the facts here, can the Town render Symes' approved house lots completely unusable for three years or more without compensation? Complaint, ¶¶ 11, 21 and

23. To be clear, under the Town's regulations Symes would receive compensation only if the Town ultimately decides to acquire the restricted property, and only for the value of the property *at that time;* there is no compensation for the total loss of use of the restricted property during the three or more years before the Town makes its decision. Complaint, ¶ 27. Said differently, would an uncompensated demand by the Town that a property owner refrain for three years from mowing their lawn, painting their house, or fixing their pipes without the Planning Board's approval survive Fifth and Fourteenth Amendment scrutiny? Of course not. "The Government's formal demand that the [plaintiff] turn over a percentage of their [property] without charge, for the Government's control and use, is 'of such a unique character that it is a taking without regard to other factors that a court might ordinarily examine.'" *Horne v. Department of Agric.,* 576 U.S. 350, 362 (2015), *citing Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 432 (1982).

Moreover, Defendants' suggestion that "at most" five of the 18 approved house lots are impacted is mistaken. Defendants' Memorandum at 7. The work that Symes must perform to complete the project and create marketable house lots – such as grading the land, laying out roadways, installing utilities, curbing, and sidewalks, installing storm water controls, performing landscaping work, etc. – is not possible without the use of these five parcels, which are scattered around the development. Complaint, ¶¶ 13, 21 & 23. The Planning Board is well aware of the extent of this necessary work on the restricted lots, much of which is required by the Board's regulations and the conditions of approval it has imposed. Complaint, ¶ 19. Given Symes' need to perform work integral to the project on these lots, the Planning Board has effectively rendered the entire property unusable for at least three years. Complaint, ¶ 23.

The second question presented by an unconstitutional conditions claim under *Nollan* and *Dolan* is whether the government has "leverage[d] its legitimate interest in mitigation to pursue governmental ends that lack an essential nexus and rough proportionality to [the impacts of the proposed development]." *Koontz*, 570 U.S. at 606; *see Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994) ("[T]he city must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development."). The facts alleged in the Complaint – taken as true for purposes of Defendants' motion – show that the Planning Board never even *tried* to make the required individualized determination. Symes has obtained approval to subdivide a parcel of land into 18 house lots. Complaint, ¶ 8. In exchange for that approval the Board has taken complete control of five of the 18 approved house lots – nearly 28% of the development – because the Town *might* decide, in three years, that it wants to acquire one or more of those lots for park purposes or to construct affordable housing. Complaint, ¶¶ 11, 12, and 14. Nowhere in its decision did the Planning Board find that these conditions are necessary to mitigate the impacts of subdividing the land, or are roughly proportional to those impacts. Complaint, ¶¶ 17-20. The facts that Symes has pled are more than sufficient to show that the challenged conditions lack any nexus whatsoever to the expected impacts of the proposed subdivision, and that demanding complete control of the property for three or more years is not only disproportionate, but extortionate within the meaning of *Koontz*, *supra*.

## II. *A taking does not have to be permanent to be unlawful.*

Defendants assert that, because the property will only be unusable for three years or more, there is no taking because the deprivation is "not permanent." Defendants' Memorandum at 7-8. However, the Supreme Court has "rejected the argument that government action must be

permanent to qualify as a taking." *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 33 (2012).

> Once the government's actions have worked a taking of property, "no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." *First English*, 482 U.S., at 321, 107 S.Ct. 2378. See also *Tahoe–Sierra*, 535 U.S., at 337, 122 S.Ct. 1465 ("[W]e do not hold that the temporary nature of a land-use restriction precludes finding that it effects a taking; we simply recognize that it should not be given exclusive significance one way or the other.")."

Id. "[C]ompensation is mandated when a leasehold is taken and the government occupies the property for its own purposes, even though that use is temporary." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002). In *Arkansas Game & Fish Comm'n supra*, the question was whether temporary flooding of land resulted in a taking. The Supreme Court held that "government-induced flooding temporary in duration gains no automatic exemption from Takings Clause inspection." 568 U.S. at 38. In *First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cty., Cal.*, 482 U.S. 304 (1987), the Supreme Court reviewed a series of cases related to temporary takings of property during World War II and found that, "Though the takings were in fact 'temporary,' . . . , there was no question that compensation would be required for the Government's interference with the use of the property." 482 U.S. at 318. The Court went on to hold that where a government regulation is struck down because it is unlawful, the entire time during which the regulation was in force is compensable: "We merely hold that where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." Id. at 321.

Another relevant factor in a temporary taking case is the duration of the impact. "[T]ime is indeed a factor in determining the existence *vel non* of a compensable taking." *Arkansas Game*

*& Fish Comm'n, supra* at 38. Here, the prohibition on making any use of the five restricted lots (and effectively the entire property) lasts at least three years and could easily extend several more years. *See* Complaint, ¶¶ 24-26. Symes' complaint alleges all the facts that this court needs to resolve whether the conditions at issue are unconstitutional. The complaint adequately states a claim that a *per se* taking has in fact occurred. *See Koontz,* 570 U.S. at 615 (where a land-use condition "would transfer an interest in property from the landowner to the government . . . any such demand would amount to a *per se* taking similar to the taking of an easement or a lien."). Defendants' assertion that a deprivation of property or a property right must be permanent to amount to a *per se* taking is wrong.

### III. *The Board's set-aside requirement is not a "moratorium."*

Defendants repeatedly use the term "moratorium" to describe the restrictions at issue. *See* Defendants' Memorandum at 1, 2, 6 & 7. This is a misnomer both in the takings context and under state land-use law. The justification for upholding an *actual* moratorium in the *Tahoe-Sierra Pres. Council, Inc.* case illustrates the difference between the conditions here – targeting a single property – and a broad-based, temporary rule that applies to all similarly-situated properties within a jurisdiction:

> [W]ith a temporary ban on development there is a lesser risk that individual landowners will be 'singled out' to bear a special burden that should be shared by the public as a whole. *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 835 . . . . At least with a moratorium there is a clear 'reciprocity of advantage,' *Mahon,* 260 U.S., at 415, 43 S.Ct. 158, because it protects the interests of all affected landowners against immediate construction that might be inconsistent with the provisions of the plan that is ultimately adopted. 'While each of us is burdened somewhat by such restrictions, we, in turn, benefit greatly from the restrictions that are placed on others.' *Keystone,* 480 U.S., at 491, 107 S.Ct. 1232.

535 U.S. at 341. Here, Symes *is* being singled out. No other property owner in the Town is subject to the conditions that the Planning Board has imposed in its decision. No other party is

prohibited from improving its property without the Board's express approval. Use of the term "moratorium" here also does not comport with Massachusetts land-use law. *See Sturges v. Town of Chilmark*, 380 Mass. 246, 252–253 (1980) ("We hold that a municipality may impose reasonable time limitations on development, at least where those restrictions are temporary *and adopted to provide controlled development while the municipality engages in comprehensive planning studies.*") (emphasis added).

This is no moratorium. If the Town prohibited *all* property owners from making improvements to their properties for three years so the Town could engage in a comprehensive planning process and make reasoned decisions as to which properties it wanted to acquire, such a rule could conceivably pass constitutional muster as a moratorium. However, the conditions at issue here are imposed only on Symes, only because Symes applied for approval to subdivide this particular property. Without (1) a demonstrated nexus between Symes' proposed project and any alleged impacts on the Town, and (2) a showing that these conditions are roughly proportional mitigation for those impacts, the conditions are unlawful.[2]

### IV. *Abstention here is both inapposite and contrary to the Supreme Court's central holding in Knick v. Township of Scott, Pennsylvania, 139 S. Ct. 2162 (2019).*

Should this court decide that Symes has been subjected to unconstitutional conditions in violation of its Fifth and Fourteenth Amendment rights, then Symes is entitled to compensation under federal law. There is no outcome of Symes' state-court appeal of the Planning Board's decision that will change this fact. "The Fifth Amendment right to full compensation arises at the

[2]Defendants' citation to M.G.L. c. 41, § 81U to support their contention that a "three-year moratorium" is allowed under state law is incomplete. Defendants' Memorandum at 2. A related provision of the Subdivision Control Law, M.G.L. c. 41, § 81Q, states, "No rule or regulation shall require, and no planning board shall impose, as a condition for the approval of a plan of a subdivision, that any of the land within said subdivision be dedicated [. . .] for use as a public way, public park or playground, or for any other public purpose, without just compensation to the owner thereof." (emphasis added).

time of the taking, regardless of post-taking remedies that may be available to the property owner." *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162, 2170 (2019). [W]here the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." *First Eng. Evangelical Lutheran Church of Glendale*, *supra,* at 321. The Supreme Court in *Knick* held in no uncertain terms that "because the violation is complete at the time of the taking, pursuit of a remedy in federal court need not await any subsequent state action." 139 S. Ct. at 2177.[3]

**Conclusion**

For the foregoing reasons, Symes respectfully submits that Defendants' motion to dismiss should be denied.

SYMES DEVELOPMENT &
PERMITTING, LLC,

By its attorneys,

*/s/Donald R. Pinto, Jr.*
Donald R. Pinto, Jr., BBO No. 548421
dpinto@pierceatwood.com
Joel Quick, BBO No. 694265
jquick@pierceatwood.com
PIERCE ATWOOD LLP
100 Summer Street
Boston, Massachusetts 02110
(617) 488-8100

Dated: June 4, 2021

---

[3]Even if abstention were not precluded by *Knick*, there is no "uncertainty" regarding state law in Symes' Land Court appeal. Defendants' Memorandum at 5. State law is clear as to what a planning board can and cannot do; the only question for the Land Court is whether the Planning Board exceeded its authority under well-settled principles. *See Collings v. Planning Bd. of Stow*, 79 Mass. App. Ct. 447, 453 (2011) ("The prohibition of § 81Q [of the Subdivision Control Law] applies 'where a planning board requires a subdivision applicant to grant land for a public purpose unrelated to adequate access and safety of the subdivision.'").

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was this day forwarded to the following counsel of record for the defendants the Town of Concord and the Town of Concord Planning Board by electronic transmission in accordance with the Court's Administrative Procedures for Electronic Case Filing:

Christina S. Marshall, Esq.
cmarshall@andersonkreiger.com
David B. Lyons, Esq.
dlyons@andersonkreiger.com
Anderson & Kreiger, LLP
50 Milk Street, 21st Floor
Boston, MA 02109

*/s/ Donald R. Pinto, Jr.*
Donald R. Pinto, Jr.

Dated: June 4, 2021